UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

INDIGO INVESTMENT GROUP,

    PLAINTIFF,

v.

TONY DEROSA-GRUND AND DEROSA-GRUND FAMILY TRUST,

    DEFENDANTS.

**VERIFIED COMPLAINT**

CASE NO. 22-cv____

Plaintiff Indigo Investment Group, an association comprised of individual investors ("Plaintiff"), by and through undersigned counsel, for their Complaint against Defendants Tony DeRosa-Grund ("DeRosa-Grund") and the DeRosa-Grund Family Trust (the "Trust") (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiff is a group of Investors comprised of entities and individuals (each an "Investor" and collectively the "Investors") who in total invested $1,585,000.00 ("Investor Funds" or "Investment Funds") pursuant to a private security offering made by Indigo Token Co. LLC ("Indigo").

2. Pursuant to the offering, in consideration of each's investment, the Investor received a pre-determined, specific amount of crypto coins identified as "NDGO Tokens," issued from the Indigo platform for trading on a crypto exchange, as well as shares in two companies, PRTX Labs, LLC and Indigo Token Company, owned by the DeRosa Grund Family Trust (the "Trust"), James Preissler ("Preissler") and James Fellus ("Fellus").

1

3. Plaintiff Indigo Investment Group is comprised of the following members: Apollo Management Group ("Apollo"); Arthur Bronfman ("Bronfman"); Gerry Czarnecki ("Czarnecki"); Ariel Gorelik ("Gorelik"); Eddie Gozker ("Gozker"); Daniel Kordash ("Kordash"); and, Dmitriy Shpuntov ("Shpuntov").

4. Pursuant to the terms of the offering and promised explicitly by DeRosa-Grund and Preissler, and ostensibly confirmed in the United States Securities and Exchange Commission Form D, Notice of Exempt Offering of Securities, prepared and filed on behalf of Indigo, OMB Number 32-35-0076 ("Form D"), and its licensed Broker Dealer, Tritaurian Capital, Incorporated (FINRA CRD #2628997), by Indigo's counsel, Mary Bielaska ("Bielaska"), the Investment Funds would remain in an escrow account until the Investors could trade the Indigo crypto coins on a public exchange.

5. In fact, the escrow agent, John Carrino, an attorney licensed in the State of New Jersey, located at the Law Offices of John Carrino, 53 Old Turnpike Road, PO Box 54, Oldwick, New Jersey, transferred the Investment Funds out of escrow one day after the funds were deposited by each Plaintiff member. Carrino was acting at the direction of DeRosa-Grund and the transfer of the Investor Funds was made for DeRosa-Grund's personal use having nothing to do with the agreed-upon Investment and contrary to the terms of the offering and DeRosa-Grund's promises and representations. Upon information and belief, Carrino, at DeRosa-Grund's direction, made the transfer of the Investor Funds directly to the DeRosa-Grund Family Trust.

6. Carrino and Defendants acted without authorization from, or giving notice to, Plaintiff or the Investors and in contravention of their representations, promises and duties owed to Plaintiff and to the Investors.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331(a)(1). Plaintiff's damages exceed the sum or value of $75,000.00, exclusive of interest and costs. In addition, this action is between citizens of different States. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Defendants are alleged to have violated federal law, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8. Plaintiff Indigo Investment Group is comprised of the Investors listed below in paragraphs 9-15.

9. Apollo Management Group is a Florida company with its principal place of business in 7050 Aloma Avenue, Winter Park, Florida 32792.

10. Arthur Bronfman is an individual residing in Miami, Florida.

11. Gerry Czarnecki is an individual residing in Boca Raton, Florida.

12. Ariel Gorelik is an individual residing in Sunny Isles, Florida.

13. Eddie Gozker is an individual residing in Glen Head, New York.

14. Daniel Kordash is an individual residing in North Miami Beach, Florida.

15. Dimitriy Shpuntov is an individual residing in Aventura, Florida.

16. Tony DeRosa-Grund is an individual residing at 1919 Rebecca Lane, Unit H8, Houston, Texas 77090 and 923 High Meadow Ranch Drive, Magnolia, Texas 77355.

17. The DeRosa-Grund Trust (the "Trust") is, upon information and belief, a Texas Trust. The Trust trustee, upon information and belief, is one or both of DeRosa-Grund's stepdaughters: Jillian Nicole DeRosa-Grund, located at 9616 Halkirk Street, Spring, Texas 77375 and/or Lindsay DeRosa-Grund, located at 62 Deepfoot Circle, Spring, Texas 77380.

3

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). Several of the Investors that make up Plaintiff Indigo Investment Group are, and were at all relevant times, citizens of this judicial district or did business within this judicial district. Further, each Investor was injured in this judicial district by Defendants' conduct, including by Defendants directly soliciting and taking the Investor Funds from this judicial district, communicating false and fraudulent statements to the Investors located in this judicial district, and engaging in financial transactions involving the transfer of funds in this judicial district.

## FACTUAL BACKGROUND

19. In late summer 2021, Fellus introduced DeRosa-Grund to the Investors.

20. DeRosa-Grund and Preissler, over the course of multiple conference calls and meetings, informed the Investors that DeRosa-Grund had developed a proprietary blockchain technology that was licensed to and controlled by a company named Indigo, a Wyoming corporation with its principal place of business at 30 North Gould Street, Suite R, Sheridan, Wyoming 82801.

21. In September 2021, DeRosa-Grund informed the Investors that Indigo was launching the coin technology onto a trading platform and would be selling crypto coins for trading on the trading platform.

22. DeRosa-Grund further represented that numerous people had committed millions of dollars to purchasing Indigo crypto coins from the company and making an investment in the company and that, if the Investors wanted to participate, their funds had to be transferred immediately.

23. DeRosa-Grund and Preissler championed Preissler's expertise as a licensed broker dealer acting on behalf of Tritaurian Capital Inc, where Preissler is a managing member.

24. DeRosa-Grund and Preissler represented that the Investor Funds would remain in escrow until the Investors could trade their crypto coins on a public exchange, and further represented that a Form D was being filed immediately with the United States Securities and Exchange Commission ("SEC").

25. DeRosa-Grund and Preissler also emphasized that Preissler had a special license with the Financial Industry Regulatory Authority ("FINRA") to handle investments in the crypto market.

26. On or about September 27, 2021 and, with regard to Czarnecki, on November 23, 2021, following additional communications with DeRosa-Grund and others associated with Indigo, Plaintiffs transferred a total of $1,585,000 to an escrow account Carrino established and controlled.

27. The Investors transferred their funds in reliance upon the express promises, *inter alia*, that the Investor Funds would remain in escrow until the Form D was filed and the Investors could trade the Indigo crypto coins on a public exchange.

28. The Investor Funds included $275,000.00 invested by Apollo; $150,000.00 invested by Bronfman; $150,000.00 invested by Czarnecki; $260,000.00 invested by Gorelik; $200,000.00 invested by Gozker; $500,000.00 invested by M2B; and, $50,000.00 invested by Shpuntov.

29. Despite DeRosa-Grund's and Preissler's promises and representations that the Form D would be filed imminently and contemporaneously with the Individual Investments, the Form D was not filed for another three months, until December 29, 2021.

30. When it was filed, the Form D contained several misrepresentations and falsities.

31. The Form D stated that Investor Funds "are being held at this time in an attorney trust account."

32. The representation in the Form D regarding the funds being held in an escrow account paralleled promises and representations made by DeRosa-Grund and Preissler, and, later, Bielaska, that the Investor Funds would remain in escrow until the Investors could trade the Indigo crypto coins on a public exchange.

33. On February 2, 2022, the escrow agent Carrino admitted that he had "released on behalf of Tony Derosa-Grund [sic]" the Investor Funds to DeRosa-Grund "on or about **the same day of receipt**" of the funds (emphasis added). The date of the release of the funds, September 28, 2021, **preceded** the filing of the Form D by over **three months**.

34. DeRosa-Grund later admitted that all of the Investor Funds had been moved out of the Escrow Account at that time.

35. Bielaska also later acknowledged that DeRosa-Grund had given Carrino the instruction to transfer the Investor Funds and that the Investor Funds in fact were released to DeRosa-Grund well before the filing of the Form D.

36. DeRosa-Grund later admitted to the Investors that the Funds were transferred to the Trust.

37. The representation that the Investor Funds were being held in escrow as of the SEC filing and would remain in escrow until the Investors could trade the Indigo coins on a public exchange was not the only inaccuracy, misrepresentation and falsehood.

38. In contrast to DeRosa-Grund's representations that multiple other investors had invested "millions of dollars" in Indigo, the Form D stated that the total investments were only

$1.9 million, meaning that the Investors had purchased approximately all but $315,000 of the securities Indigo sold.

39.     According to the Form D, Fellus was a Promoter for Indigo.  Fellus subsequently denied to the Investors that he ever provided Bielaska or anyone else permission to identify him as Promoter, that he was not the Promoter of the Indigo Fund, and, indeed, did not know he had been identified as Promoter in the Form D until informed by the Investors.

40.     In violation of her duties and responsibilities, Bielaska, upon information and belief, performed little or no State Blue Sky due diligence before filing the Form D and failed in her duty to assure that the Investor Funds were in the attorney escrow account at the time of the filing of the Form D.

41.     Later, as DeRosa-Grund later acknowledged, the Investor Funds had been transferred to him and he had invested the money on international cryptocurrency exchanges (which a second attorney retained, upon information and belief, by DeRosa-Grund, Jonathan O. Owens, an attorney licensed to practice law in the State of California, and Fellus both later confirmed) for his own benefit.

42.     The Form D does not identify DeRosa-Grund in any manner as being associated with Indigo and, for that as well as other reasons, he had no right for any reason to receive, control or otherwise handle the Investor Funds.

43.     On or about March 29, 2022, Bielaska, acting on behalf of DeRosa-Grund, and purportedly acting on behalf of Indigo, drafted an agreement between Indigo and Plaintiff to return the Investment Funds.  Both DeRosa-Grund and Preissler, who executed the formal agreement to return the Investor funds, explicitly promised that the Investor Funds would be returned.

44. No Investor Funds have been returned to date.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Fraud and Fraud in the Inducement)**

45. Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiff relied on DeRosa-Grund's promises and representations, including that the Investor Funds would remain in escrow up until the time the Investors could trade the Indigo crypto coins on a public exchange.

47. DeRosa-Grund expected Plaintiff and the Investors to rely on his statements, representations and promises.

48. Three months before the Form D was filed, DeRosa-Grund effectuated the transfer of the Investor Funds directly or indirectly to himself for his own personal use.

49. The Investor Funds, at DeRosa-Grund's direction, were, upon information and belief, transferred to the Trust and then, upon information and belief, transferred internationally.

50. DeRosa-Grund knew his statements were false when he made them and used his misrepresentations to induce Plaintiff into purchasing the private securities.

51. Plaintiff suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

### SECOND CLAIM FOR RELIEF
**(Violation of Section 10(b) of the Exchange Act and Rule 10b-5)**

52. Plaintiff realleges paragraphs 1 through 51 as if fully set forth herein.

53. The Indigo crypto coins and shares of common stock of PRTX Labs, LLC and Indigo Token Company constitute "securities" for purposes of Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c(a)(10)].

8

54. Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] make it unlawful for any person, directly or indirectly, acting intentionally, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) to employ devices, schemes or artifices to defraud; (b) to make untrue statements of material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

55. As set forth above, DeRosa-Grund made materially false and misleading statements Plaintiff and the Individual Investors.

56. As set forth above, Defendants engaged in a fraudulent and deceptive scheme to sell Indigo crypto coins and shares of common stock of PRTX Labs, LLC and Indigo Token Company stock by concealing that (a) DeRosa-Grund in fact owned and controlled Indigo notwithstanding the representations in the Form D, (b) DeRosa-Grund controlled Preissler as well as Indigo's counsel, and (c) concealing that the Investor Funds would be transferred out of the attorney escrow fund immediately upon receipt for Defendants' personal use.

57. Defendants' misconduct was in connection with the purchase or sale of a security.

58. Based on the foregoing: (a) Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5; and (b) the Trust violated Section 10(b) of the Exchange Act and Rule 10b-5(a) by aiding and abetting DeRosa-Grund's violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

59. Plaintiff suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

## THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

60. Plaintiff realleges paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiff justifiably relied on DeRosa-Grund's promises and representations, including that the Investors could trade the Indigo crypto coins on a public exchange.

62. DeRosa-Grund expected Plaintiff and the Investors to rely on his statements, representations and promises.

63. DeRosa-Grund made the false statements without exercising reasonable care or with the knowledge that he did not know whether they were true or false.

64. Plaintiff suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

## FOURTH CLAIM FOR RELIEF
### (Conversion)

65. Plaintiff realleges paragraphs 1 through 64 as if fully set forth herein.

66. Plaintiff purchased the private securities due to DeRosa-Grund's misrepresentations.

67. Plaintiff and the Investors have demanded that Defendants return the Investor Funds to Plaintiff.

68. To date, none of the Investor Funds have been returned.

69. Plaintiff has been deprived of $1,585,000.00 of its money.

70. Plaintiff has suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

71. Plaintiff realleges Paragraph 1 through 70 as if fully set forth herein.

72. Pursuant to the solicitations for investments, and the promises and representations of DeRosa-Grund and others, the Investors purchased securities in the collective amount of $1,585,000.

73. Defendants thereafter, without right or entitlement, were unjustly enriched when they failed to provide the consideration agreed upon and promised.

74. To prevent Defendants from being unjustly enriched, Plaintiff is entitled to recover all monies paid by the Investors.

75. Plaintiff has suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

## SIXTH CLAIM FOR RELIF
### (Promissory Estoppel)

76. Plaintiff realleges paragraphs 1 through 75 as if fully set forth herein.

77. For several weeks and month prior to and including September 27, 2021, DeRosa-Grund promised the Investors, among other things, that the Investment Funds would be used to purchase Indigo crypto coins and, that until such times as the Investors could trade the Indigo crypto coins on a public exchange, all of the Investor Funds would remain in an attorney escrow account established and controlled by Carrino.

78. DeRosa-Grund made this promise to induce the Investors to invest over $1.5 million dollars by purchasing securities being offered by Indigo.

79. DeRosa-Grund knew or should have known that Plaintiff and the Investors would rely on his promises and representations.

80. Defendants breached DeRosa-Grund's promises and representations by taking without authorization or right the Investor Funds out of escrow and for Defendants' own use.

81. Defendants' breach of promises will result in an injustice unless the Investor Funds are returned to Plaintiff.

82. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

### SEVENTH CLAIM FOR RELIEF
### (Violation of Florida's Deceptive and Unfair Trade Practices Act)

83. Plaintiff realleges paragraphs 1 through 82 as if fully set forth herein.

84. DeRosa-Grund expected Plaintiff to rely on his statements, representations and promises.

85. DeRosa-Grund knew his statements were false when he made them and used his used his misrepresentations to induce Plaintiff and the Investors to purchase the private security.

86. As a result, Plaintiff has suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

### EIGHTH CLAIM FOR RELIEF
### (Violation of Florida's Security Act - § 517.301)

87. Plaintiff realleges paragraphs 1 through 86 as if fully set forth herein.

88. Plaintiff relied on DeRosa-Grund's promises and representations, including that the Investor Funds would remain in escrow until the Investors could trade the Indigo crypto coins on a public exchange.

89. DeRosa-Grund expected Plaintiff and the Investors to rely on his statements, representations and promises when purchasing the private securities.

90. DeRosa-Grund knew his statements, representations and promises were false when he made them. DeRosa-Grund acted with scienter or a reckless disregard for the truth of his communications.

91. DeRosa-Grund's misrepresentations are a direct proximate cause of Plaintiff's loss.

92. Plaintiff suffered damages in an amount to be determined at trial but no less than $1,585,000.00.

### NINTH CLAIM FOR RELIEF
(Accounting)

93. Plaintiff reallege paragraphs 1 through 92 as if fully set forth herein.

94. DeRosa-Grund and the Trust were obligated by law to maintain complete and accurate records of their operation and of all their transactions, including financial transactions.

95. During the course of the Indigo Investment, Defendants have engaged in multiple financial transactions involving Investor Fees and certain self-dealing transactions.

96. Defendants have not provided records of transfers, distribution, use of funds, or other statements of account justifying and reflecting the transfer of the Investor Funds despite due requests by Plaintiff to produce such information.

97. Defendants have failed and otherwise refused to make available DeRosa-Grund's and the Trust's books and records for inspection notwithstanding requests by Plaintiff to produce such information.

98. Absent an accounting, Plaintiff cannot determine the extent to which their funds have been misused or misappropriated.

99. By their nature, the books and records of the accounts of DeRosa-Grund and the Trust, which identify the receipt and distribution of Investor Funds, are complex and complicated, and cannot be evaluated without a formal accounting.

100. No legal remedy can be adequately quantified for Plaintiff and the Induvial Investors in the absence of an accounting.

101. Wherefore, Plaintiff and the Individual Investors are entitled to an accounting of DeRosa-Grund's and the Trust's records and bank and financial accounts.

## TENTH CLAIM FOR RELIEF
### (Preliminary and Permanent Injunction)

102. Plaintiff reallege paragraphs 1 through 101 as if fully set forth herein.

103. Plaintiff will suffer immediate and irreparable harm if DeRosa-Grund and the Trust are not immediately enjoined from withdrawing or transferring funds that belong to Plaintiff or are necessary in order to remedy the damage done to Plaintiff.

104. Given the level of deceit, fraud, misuse and theft of Investor Funds, including but not limited to the deceit of the Investors and falsification of information on the SEC Form D, absent necessary restraints on, and a full and complete accounting of, DeRosa-Grund's and the Trust's accounts, Plaintiff will be left without the ability to recoup the Investment Funds.

105. Plaintiff has a likelihood of success on the merits of its claims.

106. The balance of the potential harms of issuance or non-issuance of injunctive relief favors Plaintiff and public policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a trial by jury and seeks judgment as follows:

1. Ordering that DeRosa-Grund is enjoined from withdrawing or transferring funds from the Trust or from his personal accounts unless and until the funds are used to satisfy the damages award the Court grants to Plaintiff;

2. Ordering that the Trust is enjoined from withdrawing or transferring funds or property from the Trust unless and until the funds or property are used to satisfy the damages award the Court grants to Plaintiff;

3. Ordering that Defendants immediately produce to Plaintiff all records of transfers, distribution, use of funds, or other statements of account from September 1, 2021 through the present and provide an Accounting of DeRosa-Grund's and the Trust's records and bank and financial accounts;

4. Awarding Plaintiff damages, including civil penalties and compensatory, exemplary and punitive damages, in an amount to be determined at trial;

5. Awarding Plaintiff treble damages;

6. Awarding Plaintiff pre-judgment and post-judgment interest;

7. Awarding Plaintiff its costs, expenses and attorney's fees incurred in connection with this action;

8. Awarding Plaintiff rescission of the purchase of the securities pursuant to Florida's Security Act § 571.211(2); and

9. Awarding Plaintiff such other relief as this Court deems just and proper.

Dated: August 29, 2022        Respectfully submitted,

<div style="margin-left:40%">

<u>/s/  Riley W. Cirulnick</u>
LORIUM PLLC
Riley W. Cirulnick
Florida Bar No. 333270
rcirulnick@loriumlaw.com
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300


Peter R. Ginsberg (*pro hac vice admission pending*)
MOSKOWITZ & BOOK, LLP
pginsberg@mbllp.com
345 Seventh Avenue, 21st Floor
New York, NY 10021
Telephone: (212) 221-7999
Facsimile: (646) 833-1657


*Counsel for Plaintiff*

</div>